Herbert JOHNSON, Plaintiff,

v.

INCLINE VILLAGE GENERAL IM-
PROVEMENT DISTRICT, Defen-
dant and Third–Party Plaintiff,

v.

Richard KROENING, Third–
Party Defendant.

No. CV–N–95–155–ECR.

United States District Court,
D. Nevada.

May 21, 1998.

Stephen J. Healy, Reno, NV, for Herbert Johnson.

Teresa R. Miller, Noel E. Manoukian, Noel E. Manoukian, Ltd., Gardnerville, NV, for Defendant Incline Village General Imp. Dist.

Alford H. Osborne, Reno, NV, for Richard Kroening.

### ORDER REGARDING ATTORNEY'S FEES

EDWARD C. REED, Jr., District Judge.

Before the Court is Third–Party Defendant Dr. Richard Kroening's motion for attorneys' fees and costs (# 66). Third–Party Plaintiff Incline Village General Improve-

ment District ("IVGID") has opposed (# 69), and Dr. Kroening has replied (# 74). We DENY without prejudice the motion for attorney's fees.

## BACKGROUND

Plaintiff Herbert Johnson worked for IVGID, hurt his back on the job, and sought treatment from Dr. Kroening. Dr. Kroening examined him and informed IVGID of Plaintiff's physical limitations; based on that information, IVGID determined that it could not reasonably accommodate him. IVGID eventually fired him, and Plaintiff sued for, among other things, disability discrimination.

In connection with Plaintiff's suit, IVGID deposed Dr. Kroening in December 1995. Dr. Kroening testified that although he originally diagnosed Plaintiff as unable to perform the essential functions of his job (from which testimony a trier of fact could infer that Plaintiff was not "qualified" under the Americans With Disabilities Act), at the time of deposition he thought otherwise: "I changed my opinion today, this morning." On January 19, 1996, the Court granted IVGID leave to file a Third Party Complaint against Dr. Kroening on a theory of negligent misrepresentation, as to which we possess supplemental jurisdiction. Order (# 11). We also stayed the case pending a complaint for medical malpractice before the Nevada Medical–Legal Screening Panel. *Id.* In May 1997 the Screening Panel rendered a decision in Dr. Kroening's favor. Panel Findings (# 19, Ex. A). We then lifted the stay, the case proceeded to trial, and we granted judgment as a matter of law against IVGID on its Third Party Complaint.

The Panel found no reasonable likelihood of medical malpractice, and we concluded at the close of IVGID's case that Dr. Kroening's original diagnosis was an opinion (which is not actionable as negligent misrepresentation) and that in any event IVGID offered insufficient evidence that Dr. Kroening acted negligently. Minutes (# 63). Dr. Kroening therefore moved for attorney's fees pursuant to Nev.Rev.Stat. 41A.056(2), which mandates an award of attorney's fees to a prevailing doctor in a medical malpractice case, where the Panel's findings were favorable to the doctor. This motion is now ripe.

## DISCUSSION

### I. Applicable Law

■ When state substantive law applies, attorneys' fees are to be awarded in accordance with state law. *People of Sioux County, Neb. v. National Surety Co.,* 276 U.S. 238, 243, 48 S.Ct. 239, 72 L.Ed. 547 (1928); *see Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 260 n. 31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (citing 6 Moore's Federal Practice § 54.77(2) (2d ed.1974)); *Helfand v. Gerson,* 105 F.3d 530, 536 (9th Cir.1997). This principle applies to supplemental state claims as well as to diversity cases. *Mangold v. California Pub. Utils. Comm'n,* 67 F.3d 1470, 1478–79 (9th Cir. 1995).

■ The Nevada statute which awards attorney's fees to a prevailing defendant physician reads: "If the [Panel's] determination is not in favor of the claimant, the claimant may file an action in court. If the claimant does not obtain a judgment in his favor in court, the defendant must be awarded reasonable costs and attorney's fees incurred after the date of filing the action in court." Nev.Rev. Stat. 41A.056(2). The most natural reading of this statute is that both costs and attorney's fees must be "reasonable," and Dr. Kroening does not dispute this interpretation. Reply at 8–10(# 74). Accordingly, if NRS 41A.056 applies to this case, we are required to award Dr. Kroening his reasonable attorney's fees "incurred after the date of filing the action in court."

IVGID, however, argues that 1) NRS 41A.056 does not apply, and 2) if it does apply then attorney's fees should be calculated from the date the Screening Panel rendered its decision, not from the date the Third–Party Complaint was filed. Opp'n at 8–11(# 69). We have already determined that NRS 41A.056 applies, for the reasons outlined in our Order staying this action and referring the Third–Party Complaint to the Screening Panel. Order (# 11).

Specifically, *Jones v. Wilkin,* 111 Nev. 1335, 905 P.2d 166 (1995), stands for the

proposition that negligent misrepresentation falls within the NRS 41A.009 definition of "medical malpractice." Jones had back surgery and obtained prescriptions from various doctors for pain medications. A hospital employee contacted the Nevada Department of Investigations ("NDOI"), and reported that Jones had attempted to obtain pain medication by use of her prescriptions. The NDOI contacted Jones's physicians, who signed affidavits stating that Jones had not informed them that she was receiving prescription pain medication from other sources when they prescribed pain medicine for her. *Id.* at 167. On the basis of those affidavits, Jones was charged with unlawfully obtaining controlled substances. The charges were dropped, and Jones sued the doctors on a variety of grounds. The court held that Jones' claims, to the extent she alleged intentional torts, could not be characterized as medical malpractice. She alleged that the doctors intentionally made false reports that she had obtained prescription medicine in violation of state law. Such reports to the NDOI, the court explained, could not be considered "rendering services" within the definition of "medical malpractice," because the reports were allegedly intentionally false, and no reference to the Screening Panel was necessary. By contrast, the court held, Jones' allegations that the doctors had negligently maintained their medical records raised a medical malpractice claim, and were therefore properly dismissed because they had not been referred to the Screening Panel, because the allegations involved "the failure of a physician ... to use the reasonable care, skill or knowledge ordinarily used under similar circumstances." *Id.* at 168; Nev. Rev.Stat. 41A.009.

In light of *Jones,* IVGID's claim against Dr. Kroening is properly characterized as one for medical malpractice. *Jones* makes clear that the scope of "medical malpractice" extends beyond the immediate provision of care, and encompasses even something as far removed from the immediate context of the doctor-patient relationship as the negligent maintenance of medical records and a misrepresentation resulting therefrom. Dr. Kroening's allegedly negligent diagnosis of Johnson's physical condition, and his communication of that to IVGID, similarly falls within the scope of "medical malpractice," even though, as discussed below, it is not actionable as negligent misrepresentation. Even if IVGID and Dr. Kroening did not establish a doctor-patient relationship, Dr. Kroening's alleged actions constitute "rendering services" within the meaning of the medical malpractice statute.

This conclusion is bolstered by the fact that just such an allegation of failure to exercise reasonable care was an element of IVGID's negligent misrepresentation cause of action. *Bill Stremmel Motors v. First Nat'l Bank,* 94 Nev. 131, 575 P.2d 938, 940 (1978). In essence, IVGID had to prove the most important element of a conventional medical malpractice case—that Dr. Kroening breached his duty of care. Indeed, IVGID's failure to offer evidence sufficient for a reasonable trier of fact to find that Dr. Kroening did not exercise reasonable care was one of the two grounds on which we granted judgment as a matter of law against IVGID.

 As for IVGID's second objection, we have found no Nevada cases on point. A plain reading of the statute, though, indicates that attorney's fees are not mandated for the period before the Screening Panel hands down its decision. The only place in the "Screening Panels" statute providing for attorney's fees is NRS 41A.056. Nev.Rev.Stat. 41A.003–.069. Of particular note, the remedy for filing a medical malpractice action before the Screening Panel hears the case is dismissal, not an award of attorney's fees. Nev.Rev.Stat. 41A.016(1). Additionally, NRS 41A.056(2) states that a claimant may file "an action in court" if the panel's decision is adverse, and fees must be awarded if "incurred after the date of filing *the* action in court"; "*the* action" clearly refers to the action filed *after* the adverse panel determination. That is, if a plaintiff sues prematurely, the statutorily expected course of events is a) lawsuit dismissal, b) Screening Panel consideration, and c) lawsuit refiling, in that order. Because the statute provides for dismissal (but not for an award of accrued attorney's fees) prior to the Screening Panel's decision, attorney's fees may not be

awarded if accrued between the original filing and the Screening Panel's decision.

In this case, of course, IVGID's Third–Party Complaint was formally filed in January 1996, and it appears that Dr. Kroening incurred about $11,000 in attorney's fees between that time and the time the Screening Panel rendered its decision. Reply at 10(# 74). This entire case was stayed from January 1996 to May 1997 pending the Screening Panel's decision, so that in effect the Third–Party Complaint was not filed, and Dr. Kroening's counsel thus took no action on it, until after May 8, 1997; presumably the $11,000 was incurred in defending the Panel action, as to which we have concluded fees are not compensable under NRS 41A.003–.069. Consequently, IVGID's objection is well taken—attorney's fees accrued before the Screening Panel's May 8, 1997 decision are not recoverable under NRS 41A.056(2).

## II. Local Rule 54–16

■ IVGID also argues that Dr. Kroening's motion for attorney's fees does not comply with Local Rule 54–16. We conclude that in this case LR 54–16 applies only in part.

Where federal substantive law applies, a court awards attorney's fees in light of the 12 factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), and now codified at Local Rule 54–16(b)(3). *Morales v. City of San Rafael*, 96 F.3d 359, 363–365 & nn. 8–12 (9th Cir.1996). Until recently, the law in the Ninth Circuit regarding the method of calculating attorney's fees in cases where state substantive law applies was unsettled. *Compare Shakey's Inc. v. Covalt*, 704 F.2d 426, 435–36 (9th Cir.1983) (calculation method governed by federal law) *with Hancock Laboratories, Inc. v. Admiral Insurance Co.*, 777 F.2d 520; 525–26 (9th Cir. 1985) (Reed, J., sitting by designation) (calculation method governed by state law); *see generally Ackerman v. Western Electric Co., Inc.*, 643 F.Supp. 836, 858–60 (N.D.Cal.1986). In 1995, though, the Ninth Circuit held conclusively that state law determines both the entitlement to attorney's fees and the method of calculation. *Mangold*, 67 F.3d at 1479. Consequently, the *Kerr*/LR 54–16(b)(3) factors are inapposite and the "saving clause" of

LR 54–16(b) applies: *"Unless otherwise ordered by the court,* a motion for attorney's fees must ... include the [*Kerr* factors]." Local Rule 54–16(b) (emphasis added). Because we are ordering otherwise, failure to comply with LR 54–16(b) does not bar an award of fees to Dr. Kroening.

The Nevada Supreme Court recognizes two basic sources of law on the reasonable value of an attorney's services: Supreme Court Rule 155 and *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 455 P.2d 31, 33 (1969). *See Harvey v. United Pacific Ins. Co.*, 109 Nev. 621, 856 P.2d 240, 241 (1993). Rule 155 incorporates *Kerr* almost verbatim, while *Brunzell* provides additional factors; taken together, the applicable factors are:

1. The lawyer's ability, training, education, experience, reputation, and professional standing;

2. The time and labor required;

3. The novelty and difficulty of the questions involved;

4. The work's intricacy and importance and the responsibility imposed on the lawyer;

5. The prominence and character of the parties where they affect the importance of the litigation;

6. The time limitations imposed by the client or the circumstances;

7. The lawyer's skill, and the skill needed to perform the legal services properly;

8. The skill, time, and attention actually given to the work;

9. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

10. The amount involved, the results obtained, and the benefits derived;

11. The nature and length of the professional relationship with the client;

12. The fee customarily charged in the locality for similar legal services; and

13. Whether the fee is fixed or contingent.

Dr. Kroening's counsel's affidavit is not directed toward these factors. In particular, although counsel asserts conclusorily that the fees are "reasonable," this issue is contested

and we must therefore resolve the dispute over reasonableness, by applying the factors cited above. *See Guam Soc. of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691, 696 (9th Cir.1996) (moving party bears burden of proving reasonableness, if contested). Consequently, we will permit Dr. Kroening to renew his request for attorney's fees with a properly supported motion.

■ Two features of IVGID's Opposition merit attention at this point. First, IVGID has not attached affidavits in support of "any contested fact," such as the reasonableness of Dr. Kroening's requested fees, as required by Local Rule 54–16(d). Second, IVGID has complained repeatedly, both at trial and in its present Opposition, that Dr. Kroening should have moved for judgment as a matter of law (or summary judgment, or to dismiss) earlier than the close of IVGID's case at trial. True, if Dr. Kroening had successfully moved for summary judgment, the trial of this matter and the attorney's fees accrued thereby could have been avoided. But Dr. Kroening ought not to be penalized for exercising his right to have his day in court; furthermore, it takes considerable chutzpah for IVGID to hale him into court involuntarily and then complain because he chose to defeat IVGID through a trial on the merits rather than through motion practice.

Moreover, Dr. Kroening may have reasonably relied before trial on a legal conclusion we eventually concluded was erroneous. Specifically, at trial we concluded, relying on *Bulbman, Inc. v. Nevada Bell,* 108 Nev. 105, 825 P.2d 588, 592 (1992), that Dr. Kroening's "misrepresentation" was merely a non-actionable opinion. We suggested otherwise in January 1996, however, when we granted IVGID's motion to file a Third Party Complaint against Dr. Kroening. Order at 4(# 11) (citing Restatement (Second) of Torts, § 552). But our research at that time was cursory in nature, directed only to the question of whether impleading Dr. Kroening was meritorious enough to warrant the filing of the Third Party Complaint (# 12), and the issue had not been briefed by either IVGID or Mr. Johnson; indeed, this situation demonstrates why full briefing on an issue is necessary to the resolution of legal questions. Although it eventually became clear when Dr. Kroening moved for judgment as a matter of law that his opinion was not actionable under Nevada law, and that our January 1996 conclusion to the contrary was "clearly erroneous," Dr. Kroening was entitled to rely (at least initially) on that erroneous conclusion. *See U.S. v. Alexander,* 106 F.3d 874, 876 (9th Cir.1997) (court may reconsider an issue if previous holding was clearly erroneous). Thus, the timeliness of Dr. Kroening's motion for judgment as a matter of law has no bearing on his requested fees.

### CONCLUSION

We will therefore deny Dr. Kroening's motion without prejudice to renewal, but grant the parties additional time to file moving papers and affidavits which address the factors listed above.

*IT IS, THEREFORE, HEREBY ORDERED* that Third–Party Defendant Dr. Kroening's motion for attorney's fees (# 66) is *DENIED* without prejudice.

*IT IS FURTHER ORDERED* that Dr. Kroening shall have 20 days within which to file a motion for attorney's fees which complies with this Order. IVGID shall thereafter have 20 days within which to file an opposition which complies with this Order, and Dr. Kroening shall have 15 days to reply.